JACKSON, ex dem. I. I. Peek and I. Mabee, vs. N. PEEK.

A voluntary conveyance is a deed *without any valuable consideration*. If any thing *valuable* passes between the parties, it is a *purchase ;* and it was accordingly holden that a bond executed by a son to his parent for $500 with interest annually, *if demanded*, was a valuable consideration, and would sustain a conveyance of land as a purchase ; the securing to the grantor an annuity or rent equal to the legal interest of the bond being deemed sufficient, even though it had been the intention or expectation of the parties that the principal of the bond should not be exacted.

In the case of a *voluntary conveyance*, as much as in any other case, the ques-
tion is as to actual fraud, which must be passed upon and decided by the
jury.

A trifling accruing indebtedness, or a declaration by a grantor at the time of
the making of a settlement upon his children that he owed some money,
where he retained under his control property amply sufficient to meet such
demands, is not sufficient to avoid a conveyance.

Where, on the trial of a cause, a party seeking to avoid a conveyance ad-
mits that there is no actual fraud in the transaction, the court will not look
into the facts and circumstances disclosed by the evidence to determine
whether the transaction be in fact fraudulent or not, although a verdict
be taken and a case made, subject to the opinion of the court.

A title subsequently acquired by a person who has quit-claimed his interest
in lands, in which, at the time of the quit-claim, he had no title. does not
enure to the benefit of the grantee.

A debtor, whose title to lands acquired under a judgment and execution
against him is sought to be recovered by a purchaser, is interested, and
not a competent witness for such purchaser, in an action of ejectment
brought for the recovery of the lands.

THIS was an action of ejectment, tried at the Schenecta-
dy circuit in January, 1828, before the Hon. WILLIAM A.
DUER, then one of the circuit judges.

Christopher Peek, the father of the defendant, was the
owner of a farm in the town of Rotterdam. On the 20th
November, 1815, he conveyed the whole of it (except five
acres which he reserved for his daughters) to his sons, giving
to each, by warranty deed, a portion in severalty; the prem-
ises in question being conveyed to the defendant. The sons,
at the same time, severally executed to their father a bond
conditioned for the payment of $500, with interest, to be
paid to their father and mother if demanded, or to their sis-
ters after the decease of their parents; the interest to be paid
yearly to their father or mother. In 1820, a quit claim deed
of the whole farm was executed by Christopher Peek to Chris-
topher Y. Peek. On the 5th January, 1822, the farm where-
of Christopher Peek was the owner in 1815, was sold at
sheriff,s sale by virtue of an execution, on a judgment ob-
tained against him in favor of A. Van Ingen, on the 27th Jan-
uary, 1820, and purchased by Christopher Y. Peek, to whom
a sheriff's deed was executed. In 1825, the premises in
question were sold at sheriff's sale, by virtue of two execu-
tions on judgments against Christopher Y. Peek, and bought

in by one Haverly. The lands thus sold were redeemed by I. I. Peek, one of the lessors of the plaintiff, he being a judgment creditor of Christopher Y. Peek, and a sheriff's deed of the same executed to him, bearing date the 15th July, 1826. The defendant, in 1815, took possession of the land conveyed to him by his father, and has ever since remained and still continues in possession, having paid the interest of his bond to his father until his death, which was in 1827. On the 15th July, 1826, however, the defendant re-conveyed to his father the premises conveyed to him in 1815.

The plaintiff in the judgment against Christopher Peek testified that the judgment in his favor was rendered for the amount of a bill of costs in a suit prosecuted by him as an attorney in favor of Peek against one Peebles; that the capias in that cause was issued on the 4th October, 1815, which was the commencement of his charges against Peek. It further appeared that no money was paid by either of the sons of Christopher Peek to their father at the date of the conveyances from him to them in 1815; that he said, both before and after the execution of the deeds, that he owed some money; and that he continued in possession of the farm, holding and occupying the same as his own until 7 or 8 years before the trial. Christopher Y. Peek was offered as a witness on the part of the plaintiff, and rejected by the judge as incompetent.

There were other facts in the case, not deemed material to be stated. The testimony being closed, the presiding judge inquired whether the plaintiff's counsel insisted that there was any fraud in fact in the conveyance from Christopher Peek to the defendant? to which the counsel answered that they did not, but that they considered the conveyance fraudulent in law and void; whereupon the judge directed a verdict to be taken for the plaintiff, subject to the opinion of this court on a case to be made. A verdict was entered accordingly.

*A. C. Paige*, for the plaintiff.

*M. T. Reynolds*, for the defendant.

*By the Court,* SUTHERLAND, J. The material question in this case is, whether the deed from Christopher Peek to the defendant was a valid conveyance. It is alleged on the part of the plaintiff that it was a voluntary deed, the grantor being indebted at the time, and therefore void and inoperative. The case states, that after the testimony was closed the judge enquired whether the plaintiff's counsel insisted that there was *any fraud in fact* in the conveyance to the defendant, to which they replied that they did not, but that they considered the conveyance *fraudulent in law* and void. The question of fraud, therefore, was not submitted to the jury, but the judge directed a verdict for the plaintiff, subject to the opinion of this court. The only enquiry then upon this branch of the case is, 1. Whether the deed was voluntary; and 2. Whether the grantor was indebted at the time.

The doctrine of voluntary conveyances has recently been very fully considered in the court of errors, in the case of *Seward* v. *Jackson,* (8 Cowen, 406,) and the distinction which had previously been supposed to exist between fraud in law and fraud in fact or actual fraud, appears to have been entirely exploded. The language of Judge Thompson, in *Hindes' lessee* v. *Longworth.* (11 Wheaton, 213,) is cited by Chancellor Jones and Mr. Senator Spencer with marked approbation, as containing a clear and sound exposition of the law upon this subject. It is there said, " A deed from a parent to a child for the consideration of love and affection, is not absolutely void as against creditors. It may be so under certain circumstances ; but the mere fact of being in debt to a small amount would not make the deed fraudulent. If it could be shewn that the grantor was in prosperous circumstances and unembarrassed, and that the gift to the child was a reasonable provision, according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. The want of a valuable consideration may be a badge of fraud, but it is only presumptive, not conclusive evidence of it, and may be met and rebutted by evidence on the other side." In the case of a voluntary conveyance, therefore, as much as in any other case, the question is as to actual fraud, and is to be passed upon and decided by the jury.

NEW-YORK,
May, 1830.

Jackson
v.
Peek.

NEW-YORK, Mr. Senator Spencer says in express terms, p. 435, " Strictly
May, 1830. speaking there is no such thing as fraud in law. Fraud or no
Jackson fraud is and ever must be a *fact*. The evidence of it may be so
v. strong as to be conclusive; but still it is evidence, and as
Peek. such must be submitted to a jury. No court can draw it
against the finding of a jury." If the conveyance in question
therefore were conceded to have been *voluntary*, the admis-
sion upon the trial that there was no fraud in fact would seem
to be sufficient to establish its validity.

But the conveyance in question was not voluntary. A
voluntary conveyance is well defined, in the case already re-
ferred to, to be *a deed without any valuable consideration*
The *adequacy* of the consideration does not enter into the
question, and only becomes material as evidence of a fraudu-
lent intent ; but the character of purchase or voluntary is
determined by the fact whether any thing valuable passed be-
tween the parties.

It appears from the testimony of Robert Wingate, that
Christopher Peek, when this conveyance was executed,
made a division of all his real estate, except about five acres;
among his sons, conveying a separate parcel to each in sever-
alty ; that no money was paid by either of the sons to their
father; but that each son, at the time, executed and deliver-
ed to the grantor a bond, conditioned for the payment of
$500, with interest, to him and wife, if demanded, or to the
sisters of the obligors after the death of their parents ; the in-
terest to be paid annually to the obligee and his wife. And
John W. Peek testifies, that the defendant paid the interest
of the $500 bond to his father up to the time of his death in
1827. If it was not the intention or expectation of the par-
ties that the principal of the bond should be exacted, still,
considering it as a bond securing to the grantor an annuity
or rent equal to its legal interest, it was a valuable considera-
tion and would sustain the purchase. This was expressly
adjudged in *Jackson* v. *Seward*, (8 Cowen, 432, 454.)

There is no evidence that Christopher Peek was indebted
when he made this conveyance. It is true Mr. Van In-
gen states, that on the 4th October, 1815, he issued a writ in
favor of Mr. Peek against one Peebles, and that his charges

against Mr. Peek commenced with the issuing of the writ. The conveyance it will be recollected was given on the 20th November, 1815. Another witness says, that at or about the time this conveyance was given, the grantor said he owed some money. This is all the evidence upon the subject; and it obviously amounts to nothing. It may fairly be presumed, if such presumption was necessary, that the five acres reserved by the grantor were more than sufficient to discharge the small amount which he may have then owed. As the case is now presented to the court, therefore, the conveyance from Christopher Peek to the defendant of the 20th November, 1815, must be deemed valid and effectual.

Although this is a case subject to the opinion of the court, still the court are precluded from determining, upon a view of all the facts and circumstances disclosed by the evidence, whether the transaction was in fact fraudulent or not. If the counsel for the plaintiff had not admitted that there was *no actual fraud*, the defendant might and probably would have insisted upon having the question of fraud submitted to and passed upon by the jury. The case cannot be considered as subject to the opinion of the court upon a point settled by the express admission of the parties; and the effect of that admission cannot be altered by the fact that it was probably made under a misapprehension of its legal consequences.

It is not perceived how the re-conveyance of the premises in question from the defendant to Christopher Peek, his father, on the 15th of July, 1826, can aid the title of the lessors of the plaintiff. It appeared in the course of the trial that Christopher Peek, in 1820, conveyed to Christopher Y. Peek a farm embracing the premises in question; and it was suggested upon the argument that though the grantor at the time of the conveyance had no title, yet that the title subsequently acquired by him under the deed of July, 1826, would enure to the benefit of Christopher Y. Peek, his grantee. This suggestion is answered by the fact that the conveyance to Christopher Y. Peek was a quit-claim merely, without warranty. The doctrine does not apply to such a case.

Christopher Y. Peek was properly rejected as a witness on the behalf of the plaintiffs ; he had a direct interest in the event of the suit. This action, it will be recollected, is brought to recover possession of premises which one of the lessors of the plaintiff redeemed from a sale made under a judgment against Christopher Y. Peek, the witness. If the event of this suit should determine that Christopher Y. Peek had no title to the premises, the lessor of the plaintiff would have his remedy for the amount paid by him against the plaintiff in the execution, who would be entitled to recover it from the witness, the defendant in the execution. (1 R. L. 504, s. 11.)

It is unnecessary to consider the several points and exceptions raised by the defendant in the course of the trial, as he is entitled to judgment on the grounds which have been stated.

Judgment for defendant.